563 F.2d 331
 Eloise BEARD, as Administratrix for the Estate of Jeff
Beard, the Deceased, Plaintiff-Appellant,
v.
Stanley B. ROBINSON, Roy Martin Mitchell, and Certain
Officers of the Federal Bureau of Investigation,
whose true identities are unknown to the
plaintiff, Defendants-Appellees.
 No. 76-1708.
 United States Court of Appeals,
Seventh Circuit.
 Argued Feb. 8, 1977.
Decided Sept. 28, 1977.
 
 Harold C. Hirshman, Chicago, Ill., for plaintiff-appellant.
 Thomas P. Sullivan, U. S. Atty., Alexandra M. Kwoka, Asst. U. S. Atty., Ronald S. Barliant, Chicago, Ill., for defendants-appellees.
 Before BAUER and WOOD, Circuit Judges, and SHARP, District Judge.*
 BAUER, Circuit Judge.
 
 
 1
 In this appeal we must determine whether damage claims brought against a state officer under the Civil Rights Acts, 42 U.S.C. § 1981, et seq., and against federal officers under the Fourth Amendment survive the death of the injured party, and whether the claims are time-barred. The district court held that some of the claims did not survive the death of the injured party and that the other claims were time-barred. We reverse.
 
 
 2
 Plaintiff Eloise Beard brought this action in the district court as administratrix of the Estate of Jeff Beard, who allegedly was murdered by the defendants. Plaintiff sued Stanley Robinson, a Chicago policeman at the time of the events underlying the suit, under the Civil Rights Acts, 42 U.S.C. § 1981, et seq., and the other defendants, Federal Bureau of Investigation personnel, under Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). The complaint alleges that the defendants conspired to deprive, and actually deprived, Jeff Beard of his constitutional rights in the course of an FBI investigation into corruption among members of the Chicago Police Department. As part of the investigation, the FBI purportedly employed defendant William O'Neal to covertly gather information about the Department by engaging in criminal acts with Robinson and others. Defendant Roy Mitchell served as O'Neal's FBI contact. With the assistance of Mitchell and other unknown FBI agents, Robinson and O'Neal allegedly planned and committed Jeff Beard's murder on or about May 17, 1972, when they seized Beard in Chicago under the pretext that they had a warrant for his arrest, searched and handcuffed him, and drove him to Indiana, where Robinson clubbed and shot him to death. No warrant for Beard's arrest ever existed. The complaint, filed on September 25, 1972, seeks both compensatory and punitive damages from the defendants for violating Beard's rights under the Fourth, Fifth, Eighth, Ninth and Fourteenth Amendments to the Constitution.
 
 
 3
 Upon motion of the defendants, the district court dismissed the complaint. The court reasoned that our decision in Spence v. Staras, 507 F.2d 554, 557 (7th Cir. 1974), mandates that federal civil rights actions survive for the benefit of an injured party's estate only to the extent that the applicable state law permits such claims to survive. Looking to the Illinois Survival Act, Ill.Rev.Stat. ch. 3, § 339,[1] the court concluded that the instant claims survived only insofar as they sought damages for the physical injuries Beard suffered. Relying on Jones v. Jones, 410 F.2d 365 (7th Cir. 1969), cert. denied, 396 U.S. 1013, 90 S.Ct. 547, 24 L.Ed.2d 505 (1970), the court then dismissed the action altogether because the physical injury claims were barred by Illinois's two-year statute of limitations. Ill.Rev.Stat. ch. 83, § 15.
 
 II.
 Survival
 
 4
 We turn first to the question of whether the claims alleged survive Beard'sdeath. Plaintiff presents several theories for the survival of her action. She argues that the action as a whole survives (1) under the Illinois Survival Act, both as an action to recover damages for "injur(ies) to the person" and as an action "against officers for misfeasance, malfeasance, or nonfeasance"; (2) under Illinois common law; and (3) under federal common law. We hold, as a matter of federal law, that under Illinois law the action survives "against officers for misfeasance, malfeasance or nonfeasance" and thus need not consider plaintiff's other arguments.
 
 
 5
 Neither the Civil Rights Acts nor the Supreme Court's decision in Bivens speaks to the abatement or survival of actions brought thereunder. Faced with the absence of a governing federal rule of decision, most courts that have considered the question of the survival of federal civil rights claims have looked to state law, either on the authority of 42 U.S.C. § 1988[2] or simply because reference to state law obviated the need to fashion an independent federal common law rule. E.g., Spence v. Staras, 507 F.2d 554, 557 (7th Cir. 1974); Hall v. Wooten, 506 F.2d 564 (6th Cir. 1974); Brazier v. Cherry, 293 F.2d 401 (5th Cir.), cert. denied, 368 U.S. 921, 82 S.Ct. 243, 7 L.Ed.2d 136 (1961); Pritchard v. Smith, 289 F.2d 153 (8th Cir. 1961). At least one court has found it necessary to fashion an independent federal common law rule when state law, which would have defeated the survival of the federal claim, was deemed inconsistent with the strong federal policy of insuring the survival of federal remedies for violations of federal civil rights. Shaw v. Garrison, 545 F.2d 980 (5th Cir. 1977).
 
 
 6
 Because we believe the borrowing of state law in the circumstances of this case is completely consistent with the federal policies underlying Bivens and the Civil Rights Acts, we have no occasion to fashion an independent federal common law rule here. With respect to plaintiff's civil rights claims, 42 U.S.C. § 1988 authorizes our reference to state law insofar as it is "not inconsistent with the Constitution and laws of the United States." With respect to plaintiff's Bivens claim, the adoption of state law likewise seems warranted since it is consistent with the federal policies underlying Bivens.[3]
 
 
 7
 The applicable Illinois law that we adopt as the governing federal rule is found in the Illinois Survival Act, Ill.Rev.Stat. ch. 3, § 339, which provides:
 
 
 8
 "In addition to the actions which survive by the common law, the following also survive: actions of replevin, actions to recover damages for an injury to the person (except slander and libel), actions to recover damages for an injury to real or personal property or for the detention or conversion of personal property, actions against officers for misfeasance, malfeasance, or nonfeasance of themselves or their deputies, actions for fraud or deceit, and actions provided in Section 14 of Article VI of 'An Act relating to alcoholic liquors', approved January 31, 1934, as amended."
 
 
 9
 In view of the Illinois Supreme Court's declaration that this act is "remedial in its nature and is to be liberally construed," McDaniel v. Bullard, 34 Ill.2d 487, 491, 216 N.E.2d 140, 143 (1966), we believe the district court erred in relying on Kent v. Muscarello, 9 Ill.App.3d 738, 293 N.E.2d 6 (2d Dist. 1973), for the proposition that this action does not survive as an action "against officers for misfeasance, malfeasance, or nonfeasance of themselves or their deputies." To be sure, Kent held that a malicious prosecution action against two Barrington, Illinois policemen did not survive the death of the injured party. Kent's holding that the policemen were not "officers" for the purposes of the Illinois Survival Act, however, was based on the fact that the policemen were not deemed "officers" at common law, by statute or by municipal ordinance. For the latter proposition, Kent relied on Krawiec v. Industrial Commission, 372 Ill. 560, 564, 25 N.E.2d 27 (1939), which held that policemen of the City of Chicago Heights, Illinois were not made officers of the City by municipal ordinance and thus were entitled to recover under the Illinois Workmen's Compensation Act. However, Krawiec itself distinguished City of Chicago v. Industrial Commission, 291 Ill. 23, 125 N.E. 705 (1920), which held that City of Chicago policemen were made officers by city ordinances and thus were not entitled to workmen's compensation benefits. Since City of Chicago has not been overruled by the Illinois Supreme Court and thus still stands for the proposition that Chicago policemen are officers of the City, we feel compelled to follow City of Chicago and hold that Chicago policemen are also "officers" for purposes of the Illinois Survival Act. Accordingly, we hold that the instant action brought against defendant Robinson, sued in his capacity as a Chicago policeman, survives Beard's death. See Holmes v. Silver Cross Hospital of Joliet, Illinois, 340 F.Supp. 125, 129 (N.D.Ill.1972).
 
 
 10
 Moreover, inasmuch as FBI agents are deemed federal officers under federal law, see Lowenstein v. Rooney, 401 F.Supp. 952, 960-62 (E.D.N.Y.1975), we believe that plaintiff's Bivens action also can be characterized as an action "against officers" within the meaning of the Illinois Survival Act. Accordingly, adopting as federal law the Illinois Survival Act, we hold that plaintiff's Bivens action against the federal defendants survives as well.
 
 III.
 Statute of Limitations
 
 11
 Neither the Civil Rights Acts nor Bivens fixes a time limit within which suits brought thereunder must be commenced. As to plaintiff's civil rights claims, however, precedents establish that the applicable limitations period is that which a court of the State where the federal court sits would apply had the action been brought there. O'Sullivan v. Felix, 233 U.S. 318, 34 S.Ct. 596, 58 L.Ed. 980 (1914); Duncan v. Nelson, 466 F.2d 939, 941 (7th Cir.), cert. denied, 409 U.S. 894, 93 S.Ct. 116, 34 L.Ed.2d 152 (1972); see 42 U.S.C. § 1988. Hence, we look to Illinois law to determine the statute of limitations applicable to defendant Robinson.
 
 
 12
 As to plaintiff's Bivens claims, the parties to this action agree that the applicable limitations period is that which would govern an analogous action brought in a court of the forum state. Regan v. Sullivan, 417 F.Supp. 399 (E.D.N.Y.1976); Lombard v. Board of Education of the City of New York, 407 F.Supp. 1166, 1171 (E.D.N.Y.1976), rev'd on other grounds, 502 F.2d 631 (2d Cir. 1974); Ervin v. Lanier, 404 F.Supp. 15, 20 (E.D.N.Y.1975); see Fine v. City of New York, 529 F.2d 70, 76-77 (2d Cir. 1975). Accordingly, we will also look to Illinois law to determine the statute of limitations applicable to the federal defendants. We note, however, that our borrowing of state limitations periods to determine the timeliness of both these claims is conditioned on the state limitations period being consistent with the policies underlying the federal rights of action. Occidental Life Insurance Co. v. EEOC, --- U.S. ----, ----, 97 S.Ct. 2447, 53 L.Ed.2d 402 (1977); see 42 U.S.C. § 1988.
 
 
 13
 Although the parties agree that we should look to Illinois law to determine the applicable statute of limitations, they disagree as to which Illinois statute of limitations should be applied. The plaintiff, relying on Wakat v. Harlib, 253 F.2d 59 (7th Cir. 1958), argues that Illinois's five-year statute of limitations governing "all civil actions not otherwise provided for" by the Illinois Limitations Act, Ill.Rev.Stat. ch. 83, § 16,[4] governs both her claims. Plaintiff notes that under Illinois law, this limitations period applies to causes of action created by statute, Blakeslee's Storage Warehouses v. City of Chicago, 369 Ill. 480, 17 N.E.2d 1, 4 (1938); Parmelee v. Price, 208 Ill. 544, 70 N.E. 725 (1904); Gibralter Ins. Co. v. Varkalis, 115 Ill.App.2d 130, 253 N.E.2d 605, 608-09 (1969), aff'd 46 Ill.2d 481, 263 N.E.2d 823 (1970); Lyons v. Morgan County, 313 Ill.App. 296, 40 N.E.2d 103 (1942), and that the action created by the Civil Rights Acts is such a cause of action. The same statute of limitations should govern the claims brought against the federal officers, says plaintiff, because the Bivens action is analogous to actions brought under the Civil Rights Acts, and it would be incongruous to apply a different limitations period to such actions merely because federal rather than state officers are being sued.
 
 
 14
 The defendants, relying on Jones v. Jones, 410 F.2d 365 (7th Cir. 1969), cert. denied, 396 U.S. 1013, 90 S.Ct. 547, 24 L.Ed.2d 505 (1970), argue that Illinois's two-year statute of limitations for "injur(ies) to the person, false imprisonment, and abduction," Ill.Rev.Stat. ch. 83, § 15,[5] should be applied to plaintiff's civil rights claims because the actions governed by this statute are the substantive offenses that most closely resemble the misconduct in which the defendants here are alleged to have engaged. With respect to the Bivens action, defendants contend that the two-year limitations period should also govern because (1) Bivens actions are not based upon a statutory liability like civil rights actions, but are actions to redress "constitutional torts," and (2) the two-year statute of limitations governing the instant civil rights claims should be applied to the analogous Bivens claims as well.
 
 
 15
 We turn first to the question of which state statute of limitations period applies to plaintiff's statutory civil rights claims and confess at the outset that the state of the law in this Circuit regarding the limitations period applicable to claims brought under federal civil rights acts is less than lucid.
 
 
 16
 In Wakat v. Harlib, supra, the plaintiff sued several Chicago police officers who arrested him without a warrant or probable cause and detained him six days without charging him with a crime, without allowing him to see an attorney, and without allowing him to appear before a judge for a bail hearing. The officers also coerced him into signing a confession later used in court to convict him, searched his home and workplace, and seized his personal property without a warrant or probable cause. The plaintiff's action was based on 42 U.S.C. §§ 1983 and 1985, and we held his claims were governed by Illinois's five-year statute of limitations covering causes of action created by statute. Subsequently, Wakat's holding was followed or cited without disapproval in at least the following cases: Inada v. Sullivan, 523 F.2d 485 (7th Cir. 1975); Duncan v. Nelson, 466 F.2d 939, 941 (7th Cir.), cert. denied, 409 U.S. 894, 93 S.Ct. 116, 34 L.Ed.2d 152 (1972); Rinehart v. Locke, 454 F.2d 313, 315 (7th Cir. 1971); Weber v. Consumers Digest, Inc., 440 F.2d 729, 731 (7th Cir. 1971); Baker v. F. & F. Investment, 420 F.2d 1191, 1197-98 (7th Cir.), cert. denied sub nom. Universal Builder's Inc. v. Clark, 400 U.S. 821, 91 S.Ct. 40, 27 L.Ed.2d 49 (1970); Amen v. Crimmins, 379 F.Supp. 777, 779 (N.D.Ill.1974); Holmes v. Silver Cross Hospital of Joliet, Illinois, 340 F.Supp. 125, 128 (N.D.Ill.1972).
 
 
 17
 In Jones v. Jones, supra, however, we took a different tack toward the problem of ascertaining the applicable limitations period for federal civil rights claims. The Jones plaintiff had brought suit under 42 U.S.C. § 1983 against his ex-wife, members of her family, her lawyers, and judges of the Illinois Circuit and Appellate Courts for combining to deprive him of his constitutional rights in a series of court actions involving his ex-wife's claims for alimony and child support that ultimately resulted in his serving a jail term. After determining that the judges were immune from suit and that the lawyers could not be sued under the Civil Rights Acts because they were not acting under color of state law, we looked to "the substance of the alleged injury" to determine the applicable limitations period and held that the two-year statute of limitations contained in Ill.Rev.Stat. ch. 83, § 15 governed the action against the remaining defendants because the damages sought resulted from an injury to the plaintiff's person, false imprisonment, and malicious prosecution. We attempted to distinguish Wakat on the ground that the earlier case involved a conspiracy claim brought under 42 U.S.C. § 1985, rather than a Section 1983 claim. Subsequently, Jones was cited with approval in Baker v. F. & F. Investment Co., 489 F.2d 829, 837 (7th Cir. 1973), and followed by at least three district courts in the Circuit. Cage v. Bitoy, 406 F.Supp. 1220 (N.D.Ill.1976); Klein v. Springborn, 327 F.Supp. 1289, 1290 (N.D.Ill.1971); Skrapits v. Skala, 314 F.Supp. 510 (N.D.Ill.1970).
 
 
 18
 Upon reflection, it seems to us that Wakat and Jones cannot stand together, for underlying the inconsistent results reached therein[6] are two inconsistent approaches to determining the applicable statute of limitations. The Wakat approach treats all claims founded on the Civil Rights Acts as governed by the five-year Illinois statute of limitations applicable to all statutory causes of action that do not contain their own limitations periods. Jones, on the other hand, looks beyond the fact that a statutory cause of action has been alleged and seeks to characterize the facts underlying plaintiff's claim in terms of traditional common law torts for purposes of determining the applicable state statute of limitations. Faced with these two conflicting approaches that have generated inconsistent results within the Circuit, we now believe it is necessary to overrule Jones and adopt the Wakat rule as the law of the Circuit for the following reasons.**
 
 
 19
 We believe our choice of the Wakat rule is compelled by the fundamental differences between a civil rights action and a common law tort. The Civil Rights Acts do not create "a body of general federal tort law." Paul v. Davis, 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976). Rather, they"creat(e) rights and impos(e) obligations different from any which would exist at common law in the absence of statute. A given state of facts may of course give rise to a cause of action in common-law tort as well as to a cause of action under Section 1983, but the elements of the two are not the same. The elements of an action under Section 1983 are (1) the denial under color of state law (2) of a right secured by the Constitution and laws of the United States. Neither of these elements would be required to make out a cause of action in common-law tort; both might be present without creating common-law tort liability." Smith v. Cremins, 308 F.2d 187, 190 (9th Cir. 1962) (footnote and citations omitted).
 
 
 20
 As Justice Harlan suggested with regard to the Civil Rights Acts,
 
 
 21
 "a deprivation of a constitutional right is significantly different from and more serious than a violation of a state right and therefore deserves a different remedy even though the same act may constitute both a state tort and the deprivation of a constitutional right." Monroe v. Pape, 365 U.S. 167, 194, 81 S.Ct. 473, 488, 5 L.Ed.2d 492 (1961) (concurring opinion).
 
 
 22
 By following the Wakat approach of applying a uniform statute of limitations, we avoid the often strained process of characterizing civil rights claims as common law torts, and the
 
 
 23
 "(i)nconsistency and confusion (that) would result if the single cause of action created by Congress were fragmented in accordance with analogies drawn to rights created by state law and the several different periods of limitation applicable to each state-created right were applied to the single federal cause of action." Smith v. Cremins, supra at 190.
 
 
 24
 Moreover, we note that the Wakat approach of looking to a general state statute of limitations prevails in most of our sister circuits, while the Jones approach of looking to the underlying tort to determine the applicable state statute of limitations has been followed consistently only by the Third Circuit.[7]
 
 
 25
 We thus hold that the Illinois five-year statute of limitations applies to statutory claims brought under the Civil Rights Acts. Jones v. Jones, 410 F.2d 365 (7th Cir. 1969), cert. denied, 396 U.S. 1013, 90 S.Ct. 547, 24 L.Ed.2d 505 (1970), is hereby overruled.
 
 
 26
 Turning to the Bivens claims, we recognize plaintiff's argument for application of the same statute of limitations that we apply to civil rights claims is a compelling one. A contrary result could lead to the incongruous application of inconsistent limitations periods to different members of a single conspiracy, based solely on whether an officer alleged to have committed the constitutional violation was employed by the state or federal government. Cf. Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 456 F.2d 1339, 1346-47 (2d Cir. 1972) (immunity of state and federal officers). On the other hand, since Bivens actions are not creatures of statute, the state law rationale used above for application of the five-year statute of limitations is not appropriate to Bivens claims.
 
 
 27
 With these considerations in mind, we look to the Illinois statutes of limitations that we might apply. Again we are faced with a choice between the two-year limitations periods for torts in Ill.Rev.Stat. ch. 83, § 15, and the five-year limitations period for "actions not otherwise provided for" in Ill.Rev.Stat. ch. 83, § 16. We can eliminate the first choice for the same reasons we refused to apply the Illinois statute of limitations for torts to the state defendant here. Like civil rights claims, Bivens claims for the deprivation of constitutional rights cannot be equated with state tort claims. Both the elements of the two types of claims and the underlying rights asserted are distinctly different. Regan v. Sullivan, 417 F.Supp. 399, 403 (E.D.N.Y.1976). The Supreme Court recognized these differences in Bivens itself:
 
 
 28
 "(A)s our cases make clear, the Fourth Amendment operates as a limitation upon the exercise of federal power regardless of whether the State in whose jurisdiction that power is exercised would prohibit or penalize the identical act if engaged in by a private citizen." 403 U.S. at 392, 91 S.Ct. at 2002.
 
 
 29
 "The interests protected by state laws regulating trespass and the invasion of privacy, and those protected by the Fourth Amendment's guarantee against searches and seizures, may be inconsistent or even hostile." 403 U.S. at 394, 91 S.Ct. at 2003.
 
 
 30
 The only other applicable statute of limitations is the five-year catch-all period of limitations we applied to the instant civil rights claims. For those claims, we held that the five-year period applied because they were based on a liability created by statute, for which Illinois courts apply the five-year limitations period. For Bivens -type claims, we think it inappropriate to apply the five-year statute of limitations on that basis, but apply that statute because no other Illinois statute of limitations can appropriately be applied. This conclusion is reinforced by the knowledge that an identical statute of limitations period will be applied to all the defendants in this action, thus avoiding the inconsistent result of applying different statutes of limitations to defendants who are charged with engaging in a single conspiracy.
 
 
 31
 In summary, we hold that this survivors action may be brought by the plaintiff and that her claims are not time-barred. Accordingly, the district court's judgment is reversed, and the case is remanded for further proceedings.
 
 
 32
 REVERSED and REMANDED.
 
 
 
 *
 The Hon. Allen Sharp, United States District Court for the Northern District of Indiana, is sitting by designation
 
 
 [1]
 Ill.Rev.Stat. ch. 3, § 339 provides:
 "In addition to the actions which survive by the common law, the following also survive: actions of replevin, actions to recover damages for an injury to the person (except slander or libel), actions to recover damages for an injury to real or personal property, actions against officers for misfeasance, malfeasance, or nonfeasance of themselves or their deputies, actions for fraud or deceit, and actions provided in Section 14 of Article VI of 'An Act relating to alcoholic liquors', approved January 31, 1934, as amended."
 
 
 [2]
 42 U.S.C. § 1988 provides in pertinent part:
 "The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of this chapter and Title 18, for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the Constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause, and, if it is of a criminal nature, in the infliction of punishment on the party found guilty."
 
 
 [3]
 State survival statutes commonly have been adopted as a matter of federal law for application to other federal causes of action for which there is no federal rule regarding abatement or survival. E. g., Cox v. Roth, 348 U.S. 207, 75 S.Ct. 242, 99 L.Ed. 260 (1955) (Jones Act); Just v. Chambers, 312 U.S. 383, 61 S.Ct. 687, 85 L.Ed. 903 (1941) (admiralty tort); Van Beeck v. Sabine Towing Co., 300 U.S. 342, 57 S.Ct. 452, 81 L.Ed. 685 (1937) (Merchant Marine Act). See also the other cases cited in Brazier v. Cherry, supra, and Pritchard v. Smith, supra
 
 
 [4]
 Ill.Rev.Stat. ch. 83, § 16 provides:
 "Except as provided in Section 2-725 of the 'Uniform Commercial Code', approved July 31, 1961, as amended, and Section 11-13 of 'the Illinois Public Aid Code', approved April 11, 1967, as amended, actions on unwritten contracts, expressed or implied, or on awards of arbitration, or to recover damages for an injury done to property, real or personal, or to recover the possession of personal property or damages for the detention or conversion thereof, and all civil actions not otherwise provided for, shall be commenced within 5 years next after the cause of action accrued."
 
 
 [5]
 Ill.Rev.Stat. ch. 83, § 15 provides:
 "Actions for damages for an injury to the person, or for false imprisonment, or malicious prosecution, or for a statutory penalty, or for abduction, or for seduction, or for criminal conversation, shall be commenced within two years next after the cause of action accrued."
 
 
 [6]
 Apart from the Jones Court's failure to recognize that Wakat was based on 42 U.S.C. § 1983 as well as Section 1985 and thus could not be distinguished merely on that ground, Wakat's reasoning could have been applied without strain to the Jones facts; the action brought by Jones under 42 U.S.C. § 1983 could just as well have been characterized as a statutory right of action governed by Illinois's five-year statute of limitations. Likewise, the damages Wakat sought arose from injuries that could have been characterized as injuries to his person, false imprisonment, and abduction, all mentioned in Ill.Rev.Stat. ch. 83, § 15
 
 
 **
 In view of our overruling Jones, the portions of this opinion relative to our holding have been circulated among all the judges of this Court in regular active service. No judge favored a rehearing en banc with respect to that holding. Judge Tone did not participate in the Court's action
 
 
 [7]
 E. g., Ammlung v. City of Chester, 494 F.2d 811, 814 (3d Cir. 1974); Howell v. Cataldi, 464 F.2d 272, 277 (3d Cir. 1972). The Second and Ninth Circuits uniformly apply state limitations periods for statutory causes of action. E. g., Rosenberg v. Martin, 478 F.2d 520, 526 (2d Cir.), cert. denied, 414 U.S. 872, 94 S.Ct. 102, 38 L.Ed.2d 90 (1973); Swan v. Bd. of Higher Education of the City of New York, 319 F.2d 56, 60 (2d Cir. 1963); Donovan v. Reinbold, 433 F.2d 738, 741-42 (9th Cir. 1970); Smith v. Cremins, 308 F.2d 187 (9th Cir. 1962). The Fourth Circuit, in cases arising out of Virginia, applies that State's general limitations period for personal injuries rather than its shorter limitations period for intentional torts. That court reasons that a federal civil rights action is more serious than a common law tort and thus deserves a longer statute of limitations. Almond v. Kent, 459 F.2d 200, 203-04 (4th Cir. 1972), followed in Runyon v. McCrary, 427 U.S. 160, 179-82, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976), and Allen v. Gifford, 462 F.2d 615 (4th Cir. 1972). There is a split in authority in the Fifth Circuit. Some cases apply state limitations periods for statutory actions. White v. Padgett, 475 F.2d 79, 85 (5th Cir.), cert. denied, 414 U.S 861, 94 S.Ct. 78, 38 L.Ed.2d 112 (1973); Franklin v. City of Marks, 439 F.2d 665 (5th Cir. 1971); Nevels v. Wilson, 423 F.2d 691 (5th Cir. 1970). Others apply the state statute of limitations that would govern a common law action that could be brought in a state court upon the same facts. Shaw v. McCorkle, 537 F.2d 1289 (5th Cir. 1976); Shank v. Spruill, 406 F.2d 756 (5th Cir. 1969); Beard v. Stephens, 372 F.2d 685 (5th Cir. 1967). The most recent cases in the Sixth Circuit have applied state limitations periods for statutory actions. Mason v. Owens-Illinois, Inc., 517 F.2d 520 (6th Cir. 1975); Garner v. Stephens, 460 F.2d 1144 (6th Cir. 1972). Contra, Madison v. Wood, 410 F.2d 564 (6th Cir. 1969); Bufalino v. Michigan Bell Tel. Co., 404 F.2d 1023, 1028 (6th Cir. 1968); Mulligan v. Schlachter, 389 F.2d 231 (6th Cir. 1968). In Reed v. Hutto, 486 F.2d 534 (8th Cir. 1973), the Eighth Circuit recognized the existence of a clear split in the circuit between the two methods of choosing an appropriate statute of limitations. Since Reed, the court has avoided the problem by applying state statutes of limitations, other than those for common law torts or for statutory actions, that "clearly apply" to civil rights actions. Chambers v. Omaha Public School District, 536 F.2d 222, 228 (8th Cir. 1976) (Nebraska statute of limitations applying to "actions upon a liability created by federal statute . . . for which . . . no period of limitations is provided in such statute." Peterson v. Fink, 515 F.2d 815 (8th Cir. 1975) (Missouri statute of limitations applying to actions against officers for liabilities incurred by official acts). The Tenth Circuit has applied general state statutes of limitations for "injuries to the rights of another not arising from a contract and not otherwise enumerated." Crosswhite v. Brown, 424 F.2d 495 (10th Cir. 1970); Wilson v. Hinman, 172 F.2d 914 (10th Cir.), cert. denied, 336 U.S. 970, 69 S.Ct. 933, 93 L.Ed. 1121 (1949)